IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARMEN D. CARINCI,

    Plaintiff,

v.                                                                                1:17-cv-00910-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Carmen D. Carinci's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (Doc. 17), which was fully briefed on May 2, 2018. *See* Docs. 21, 22, 23. The parties consented to my entering final judgment in this case. Docs. 3, 7, 8. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to incorporate all the limitations found by examining psychologist Dr. Teresa Makowski in the RFC. I therefore GRANT Ms. Carinci's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

### I.    Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.  Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Carinci was born in 1969, completed one year of college, and worked for approximately 15 years as a dental assistant, and for much shorter periods as a pharmacy technician and a counter assistant in a donut shop. AR 182, 237.[3] Ms. Carinci filed an application for disability insurance benefits ("DIB") on October 18, 2013, alleging disability since May 8, 2012 due to bipolar disorder, depression, anxiety, hand tremors caused by the use of lithium, and myofascial pain throughout her body. AR 182–85, 236. The Social Security

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 12-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

Administration ("SSA") denied her DIB claim initially on January 21, 2014. AR 114–17. The SSA denied her DIB claim on reconsideration on July 8, 2014. AR 121–25. Ms. Carinci requested a hearing before an ALJ. AR 127–28. On February 10, 2016, ALJ Kim Fields held a hearing. AR 29–53. ALJ Fields issued his unfavorable decision on March 25, 2016. AR 12–28.

The ALJ found that Ms. Carinci met the insured status requirements of the Social Security Act through December 31, 2017. AR 17. At step one, the ALJ found that Ms. Carinci had not engaged in substantial, gainful activity since May 8, 2012, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Carinci's bipolar disorder, depression, and fibromyalgia were severe impairments. *Id.* At step three, the ALJ found that none of Ms. Carinci's impairments, alone or in combination, met or medically equaled a Listing. AR 17–19. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Carinci's RFC. AR 19–21. The ALJ found Ms. Carinci had the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) except can sit for thirty minutes at a time; stand for fifteen minutes at a time; can perform unlimited walking; can perform low end complex tasks; cannot perform supervisory duties; and cannot be subject to quotas.

AR 19.

At step four, the ALJ concluded that Ms. Carinci could not perform her past relevant work as a dental assistant or as a medical clerk. AR 22. The ALJ found Ms. Carinci not disabled at step five because she could perform jobs that exist in significant numbers in the national economy—such as appointment clerk, telephone solicitor, and document preparer. AR 22–23. On May 26, 2016, Ms. Carinci requested that the Appeals Council review the ALJ's unfavorable decision. AR 180–81. On July 7, 2017, the Appeals Council denied the request for

review. AR 1–5. Ms. Carinci timely filed her appeal to this Court on September 5, 2017. Doc. 1.[4]

IV. **Ms. Carinci's Claims**

Ms. Carinci raises nine arguments for reversing and remanding this case: (1) the ALJ failed to properly weigh the opinion of treating psychiatrist, Dr. Roxana Raicu; (2) the ALJ improperly rejected the opinion of treating physician Dr. Belyn Schwartz; (3) the ALJ improperly rejected the opinion of treating nurse practitioner Camille Gonzales, CNP; (4) the ALJ's RFC failed to incorporate all of the limitations found by examining psychologist Dr. Makowski; (5) the ALJ improperly weighed the opinions of state agency doctors Ralph Robinowitz and Suzanne Castro; (6) the ALJ failed to account for limitations in her abilities to finger and handle; (7) the ALJ made an "improper credibility finding" and failed to consider her fibromyalgia; (8) the ALJ failed to ask the vocational expert ("VE") if his testimony was consistent with the Dictionary of Occupational Titles ("DOT"); and (9) because the ALJ gave the VE an inaccurate RFC, Ms. Carinci is not able to do the jobs listed by the VE at step five. *See* Doc. 17. I find that the ALJ erred by failing to incorporate all the limitations found by examining psychologist Dr. Makowski in the RFC. Because I remand based on this error, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[4] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

5

V.     **Analysis**

   A. The ALJ erred by failing to incorporate all the limitations found by examining psychologist Dr. Makowski in the RFC.

Ms. Carinci argues that the ALJ failed to account for the limitations found by examining psychologist Dr. Makowski. Doc. 17 at 16–18. Ms. Carinci argues that the ALJ "essentially rejected the opinion" of Dr. Makowski, despite claiming to give it "great weight." *Id.* at 18. She argues that the ALJ failed to incorporate all the limitations in Dr. Makowski's opinion into her RFC. *Id.* at 17. The Commissioner argues that "the ALJ did not reject—and his RFC finding does not conflict with—the opinions of Dr. Makowski." Doc. 21 at 8. I agree with Ms. Carinci.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§] 404.1545." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect her physical abilities, mental abilities, and other abilities. 20 C.F.R. § 404.1545(b)–(d). An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

6

In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at*2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* If the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence, and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009–10. This does not mean that an ALJ must discuss every piece of evidence in the record. But it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

Dr. Makowski conducted a consultative mental exam of Ms. Carinci at the request of the State of New Mexico Disability Determination Services ("DDS"). AR 402–08. DDS specifically asked Dr. Makowski to describe Ms. Carinci's "ability to understand and remember basic instructions, concentrate and persist at tasks of basic work, interact with the general public and/or co-workers and adapt to changes in the work place." AR 403. In her report, Dr. Makowski opined that Ms. Carinci

> should be able to understand, follow basic work instructions and persist at tasks, although low energy and poor concentration may at times disrupt this. Interactions with the general public and coworkers should be adequate. Ability to cope with changes in the work environment may be difficult for her due to her high level of anxiety.

AR 408.

The ALJ accurately summarized Dr. Makowski's findings. AR 20. And, later in the opinion, the ALJ stated that he afforded "[g]reat weight" to her opinion. AR 21. However, the ALJ offered no explanation of why he gave the opinion "great weight," nor did he refer to any of the factors for weighing opinions. *See* 20 C.F.R. § 404.1527(c)(1)–(6) (effective Aug. 24, 2012 through March 26, 2017).[5] Even more problematic, the ALJ offers no explanation of how he incorporated the limitations in Dr. Makowski's opinion into Ms. Carinci's RFC. The ALJ found Ms. Carinci had the RFC to do the following:

> perform sedentary work as defined in 20 CFR 404.1567(a) except can sit for thirty minutes at a time; stand for fifteen minutes at a time; can perform unlimited walking; can perform low end complex tasks; cannot perform supervisory duties; and cannot be subject to quotas.

---

[5] The ALJ's opinion includes only a single paragraph discussing the weight he gave to all of the medical opinions. *See* AR 21. The ALJ provided no explanation for the weight he assigned to several of the medical opinions. *See id*. ("Great weight is afforded the opinions of the consultative psychologist pursuant to SSR 96-5p. Similarly, great weight is afforded the opinions of the state agency medical consultants pursuant to SSR 96-6p. Similarly, great weight is afforded the opinions of the medical expert pursuant to SSR 96-5p.")

8

AR 19. Dr. Makowski's opinion is more restrictive than the ALJ's RFC, and the ALJ's failure to either incorporate or explain why he rejected the limitations in her opinion is legal error. *See* SSR 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Because the ALJ did not explain why Dr. Makowski's limitations were not adopted, remand is required.

Dr. Makowski's opinion is more limited than the ALJ's RFC in two critical ways. First, Dr. Makowski limited Ms. Carinci to "understand[ing] and follow[ing] basic work instructions." AR 408. Ms. Carinci argues that Dr. Makowski's reference to "basic work instructions" constitutes a limitation to "simple work." Doc. 17 at 17. I agree. "Basic" is defined as "of, relating to, or forming the base or essence." *Merriam Webster*, available at https://www.merriam-webster.com (last visited June 26, 2019). The Program Operations Manual System's ("POMS")[6] list of the base "Mental Abilities Needed for Any Job" includes "[t]he ability to understand and remember very short and simple instructions" and "[t]he ability to carry out very short and simple instructions." POMS 25020.010(B)(2). Semiskilled and skilled work require these "basic abilities" and "an increasing requirement for understanding and memory and for concentration and persistence, e.g., the ability to: understand and remember detailed instructions, [and] carry out detailed instructions." POMS 25020.010(B)(4). Given these definitions, I agree that Dr. Makowski's limitation to "understand[ing] and follow[ing] basic work instructions" essentially limits Ms. Carinci to simple work.[7] The Commissioner argues that

---

[6] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

[7] The ALJ himself appears to have read Dr. Makowski's limitations to following "basic" instructions as being a limitation to "simple," noting that Ms. Carinci "was observed to be able to

while "Dr. Makowski said that [Ms. Carinci] *could* understand and follow basic work instructions, . . . she did not state that [Ms. Carinci] could not perform low-end complex tasks . . . ." Doc. 21 at 9 (emphasis in original). The Commissioner parses Dr. Makowski's language too finely. It makes no sense that Ms. Carinci could carry out low-end complex tasks without the ability to understand and follow complex instructions.[8] A plain reading of Dr. Makowski's opinion is that Ms. Carinci is limited to simple work. This is not compatible with the ALJ's RFC finding that she is capable of performing "low end complex tasks."

Second, Dr. Makowski noted that Ms. Carinci had limitations in her ability to cope with changes in the work environment "due to her high level of anxiety." AR 408. The "ability to respond to changes in (a routine) work setting" is a mental ability needed for any job. POMS DI 25020.010(B)(2)(d). The ALJ simply does not discuss Ms. Carinci's limitations in this area. Nor does the ALJ explain how he incorporated these limitations into Ms. Carinci's RFC. The Commissioner argues that "Dr. Makowski did not translate [her] general findings into work-related limitations," and that the ALJ therefore was free to disregard her findings. Doc. 21 at 9–10. I disagree. Given that the ability to respond to changes is a mental ability required for all jobs, I find the ALJ erred by not discussing Dr. Makowski's finding that Ms. Carinci was limited in this area. The Commissioner further argues that Ms. Carinci's limitation in her ability to respond to changes is somehow encapsulated by testifying psychological expert Dr. Adams's finding that Ms. Carinci "should not be required to perform supervisory tasks or tasks that

---

follow simple instructions." AR 21. The ALJ, however, did not cite the record source for this conclusion.

[8] The Court notes that the ALJ found Ms. Carinci unable to do her past relevant work based on the vocational expert's ("VE's") testimony that "these jobs were precluded because the claimant cannot follow complex work instructions." *Id*. The ALJ does not explain how someone who cannot follow complex work instructions can perform complex tasks.

10

involved quotas." *Id*. at 9.  As Ms. Carinci points out, however, a limitation in adaptation relates to the ability to plan, respond to changes, deal with stress, follow rules, and adhere to a schedule and time constraints, and is not restricted to supervisory tasks or quota work.  Doc. 22 at 5 (citing POMS DI 24510.061(B)(4)(a)).  The ALJ offers no explanation of how he incorporated Ms. Carinci's limitation in her ability to cope with changes into her RFC.  Further, the Commissioner's argument that the ALJ addressed this limitation by adopting Dr. Adam's limitations is a post hoc rationalization.  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR 96-8p, 1996 WL 374184, at *7.  This Court cannot rely on explanations not provided by the ALJ.  *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process.").

## VI.     Conclusion

The ALJ erred by failing to incorporate all the limitations found by examining psychologist Dr. Makowski in Ms. Carinci's RFC.  The Court remands so that the ALJ can either incorporate these limitations or explain why he rejected them.  The Court does not reach Ms. Carinci's other claimed errors, which "may be affected by the ALJ's treatment of this case on remand."  *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 17) is GRANTED.

11

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent